PARENT *v.* WALMSLY'S Adm'r.

WILL—INDIANS.—An Indian, consistently with the provisions of § 1, p. 232, 1 R. S. 1852, may be a *bona fide* resident of the *United States,* although not a citizen, and may therefore transfer property by devise. *Scott* v. *Sandford,* 19 How. U. S. R. 361.

JUDICIAL KNOWLEDGE.—In an action to recover damages for the

Parent *v.* Walmsly's Adm'r.

breach of a covenant of warranty in a deed, by reason of a prior incumbrance, by a mortgage to the Sinking Fund, on the property conveyed, where the defendant pleaded, that "the mortgage to the Sinking Fund was executed, and the land therein was sold, more than twenty years prior to the commencement of this suit, and more than twenty years have elapsed since the mortgage became forfeited for the nonpayment of the debt, to secure which the land was mortgaged," &c., but did not show when the mortgage was made, or the forfeiture occurred, the court will judicially notice, that an act, approved *January* 19, 1846, extended the time for the payment of such mortgages for five years, from *January* 1, 1847, and that the statute of limitations in this case, therefore, could not have begun to run until *January* 1, 1853, and that the plea is therefore unavailable to bar the action.

APPEAL from the *Warren* Common Pleas.

DAVISON, J.—This was a claim filed by the appellant, who was the plaintiff, against the appellee, as administrator of the estate of *John P. Walmsey*, deceased.

The following are the facts alleged in the complaint: *Walmsly*, while in life, and on the 14th of *August*, 1856, for the consideration of 2750 dollars, then in hand paid, executed to one *Mary Griffiths*, a deed, in fee simple, with covenants of general warranty, for the west half of the north-east quarter of section 35, in township 22 north of range 8 east, containing 80 acres, also, for the north-west quarter of the north-west quarter of the same section, township and range, containing 40 acres.

The tract of 80 acres, above described, is alleged to have been worth, at the date of the deed, 1850 dollars, which sum with interest thereon, the plaintiff, for reasons hereinafter stated, claims as damages against said estate. After the making and delivery of the deed, viz: on the 10th of *December*, 1856, the plaintiff, by lawful marriage, became the husband of *Mary Griffiths*, and she, being thus his lawful

wife, afterwards, on the 13th of *July*, 1858, made her last will, whereby she devised said half-quarter section, together with all the other lands which she then owned, to the plaintiff, and afterwards, on the 14th of *July*, then next following, she the said *Mary*, departed this life. The will thus made was duly admitted to probate and duly recorded.

It is averred that when the deed from *Walmsly* to *Mary Griffiths*, was executed, there was a lien on said 80 acre tract, for 250 dollars, by mortgage to the State, for the use of the Sinking Fund, made by one *Robert Pearson*, from whom *Walmsly* had purchased the land, and that said administrator, although duly notified of the existence of said lien, has not paid the same or any part thereof; nor have the heirs of *Walmsly* done any thing in the way of discharging that incumbrance. And further, it is averred, that the agent of the Sinking Fund advertised, that said half-quarter would be sold on the 8th of *December*, 1860, for the payment of the sum secured by the mortgage and interest thereon, &c.; that the plaintiff, prior to said advertisement, not knowing of the incumbrance, had sold, and, by warranty deed, conveyed the same to one *Jacob Harris*, and in order to save him harmless, and not being able to procure money for that purpose, he, the plaintiff, surrendered and released to him, real estate worth 1000 dollars, and thus released himself from his liability on the covenants of his deed to *Harris;* and further, *Harris* afterward, on said 8th of *December*, was compelled to, and did purchase the land in question, at the sale so advertised as aforesaid. Wherefore the plaintiff claims of the estate of *Walmsly*, the damages which he has sustained by reason of the premises, &c.

The defendant's answer consists of two paragraphs: 1. That *Mary Griffiths*, afterwards *Mary Parent*, was not, when she executed said will, or at the time of her death, a citizen of the *United States;* but was an Indian woman; that her

Parent *v.* Walmsly's Adm'r.

ancestors were Indians of the tribe of the *Pottawatomies*, and her father was a chief of that tribe. Wherefore the defendant avers that said *Mary*, being thus an Indian, and not a citizen, had no legal capacity to make the will, or devise the property. 2. That the mortgage to the Sinking Fund was executed, and the land therein was sold, more than twenty years prior to the commencement of this suit, and further, more than twenty years have elapsed since the mortgage became forfeited for the non-payment of the debt, to secure which the land was mortgaged, &c. The plaintiff demurred severally, to these paragraphs. To the first the demurrer was overruled, but to the second it was sustained.

In argument the appellant presents but one question, namely: Does the first paragraph constitute a valid defence to the action? We have a statute which says: "That no person except a citizen of the *United States*, or an alien who shall be at the time a *bona fide* resident of the *United States*, shall take, hold, convey or pass by descent, lands, except in such cases of descent or devise as are provided by law." 1 R. S. p. 232, sec. 1. This provision is referred to by the appellee, as decisive of the validity of the defence in question. Is it effective for that purpose? The demurrer concedes that the devisor was not a citizen of the *United States*; but the mere fact that she was not a citizen, did not render her legally incapable of making a devise. For aught that appears in the pleading, she may have been in the purview of the statute, a *bona fide* resident of the *United States*, and that being the case, the devise invested the plaintiff with a valid title. It is however, insisted that "Indians are neither aliens nor citizens; that the *United States* hold to them a relationship similar to that of guardian and ward, and they can not, therefore, exercise any of the privileges of citizens." This position is untenable. In *Scott* v. *Sandford*, 19 Howard U. S. R. 404, the court says: "It is true that the course of events

has brought the Indian tribes within the limits of the *United States*, under subjection to the white race, and it has been found necessary, for their sake, as well as our own, to regard them as in a state of pupilage, and to legislate to a certain extent over them and the territory they occupy. But they may, without doubt, like the subjects of any other foreign government, be naturalized by the authority of Congress, and become citizens of a State, and of the *United States; and* if an individual should leave his nation or tribe, and take up his abode among the white population, he would be entitled to all the rights and privileges which would belong to an emigrant from any other foreign people."

The exposition thus made, seems to be correct. An Indian may be admitted to citizenship, and though not a citizen, may be a resident alien within the intent of the statute. The pleading then is defective, because it fails to aver that the devisor was not, when she executed the will, a *bona fide* resident of the *United States*.

But the appellee has assigned a cross error to the effect, that the court erred in sustaining the demurrer to the second paragraph. That pleading, as we have seen, sets up the statute of limitations to the plaintiff's claim, on the ground that the mortgage upon which it is based was executed and had become forfeited at least twenty years prior to the commencement of the action. Suit in this case was instituted *February* 24, 1861. But when the mortgage was executed, or its forfeiture occurred, is not shown by the record. We will, however, judicially notice that by an act approved *January* 19th, 1846, time for the payment of mortgages to the Sinking Fund, was extended for five years, from and after the 1st of *January*, 1847. Acts of 1846, p. 24. The statute could not operate until the 1st of *January*, 1853, because, until that date, the mortgagee had no right to sue on the mortgage, and the re-

sult is, the defence pleaded could not be an available bar to the action.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.

*B. F. Gregory* and *J. Harper*, for the appellant.

*Joseph H. Brown* and *James Park*, for the appellee.